IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:24-CR-00431 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | |
| CHRISTOPHER KELLY, | ) | |
| | ) | |
| Defendant. | ) | **ORDER** |

Before the Court is Defendant's motion to withdraw his guilty plea.  (ECF No. 24).

Defendant asks to withdraw his plea for three reasons: (1) he was not fully informed about potential

penalties; (2) he is in possession of newly-discovered evidence that was unavailable prior to his

plea; and (3) he entered his plea under duress.  (*Id.* at PageID #112).  The Government opposed

Defendant's motion.  (ECF No. 28).  For the following reasons, Defendant's motion is **DENIED**.

## I.      PROCEDURAL BACKGROUND

On November 14, 2024, Defendant was indicted for wire fraud (Counts 1–6); bank fraud

(Counts 7–9); and theft of government funds (Counts 10–12) for submitting fraudulent

applications for, and converting the proceeds from, pandemic-era unemployment insurance

programs and Paycheck Protection Program loans.  (ECF No. 1, Indictment).  At his arraignment

on November 18, 2024, Defendant entered a plea of not guilty and was released on bond.  (Minutes

of proceedings [Non-document], dated Nov. 18, 2024; ECF No. 6, Appearance Bond).  After

granting four separate motions to continue (ECF Nos. 11, 17, 18, & 19), the Court scheduled a

pretrial conference on November 25, 2026, at 12:00 PM; it was converted to a change of plea

hearing at the parties' request and pursuant to their written plea agreement.  (Minutes of

proceedings [non-document] dated 11/25/2025).

1

### A. Defendant's Guilty Plea

Defendant was placed under oath and acknowledged that any false answers to the Court's questions could result in charges and penalties for perjury. (ECF No. 26, Tr. of Plea Hr'g, PageID #117). The Court confirmed that Defendant signed the plea agreement and initialed each page as an indication that he read it, reviewed it with his counsel, and understood and agreed with all its terms. (*Id.* at PageID #120–22). The Court also confirmed that Defendant agreed to plead guilty of his own free will without any promises (other than those contained in the plea agreement) or any threats. (*Id.* at PageID #122–23). The Government stated the potential statutory penalties for Counts 2–6, 7–9, and 10–12, which consisted of the maximum terms of imprisonment, maximum fines, maximum periods of supervised release, and mandatory special assessments associated with each count. (*Id.* and PageID #125).

The Court discussed the Sentencing Guidelines at length with Defendant. The Government estimated Defendant's adjusted offense level at 17 and his total offense level at 12 (following reductions under USSG §§3E1.1(a) & (b) (acceptance of responsibility) and §4C1.1(a) (zero-point offender)). Counsel agreed that Defendant was likely in Criminal History Category I. (*Id.* at PageID #134–35). The Court then explained possible outcomes at sentencing based on offense levels varying from 17 to 12, all presuming the use of Criminal History Category I. (*Id.* at PageID #139–40). At offense level 17, the Court asked Defendant: "Can you see a total offense level of 17 and Criminal History Category I, which is the column right next to the 17, can you see that the range is 24 to 30 months? . . . [T]hat's an advisory range, which means that I have the ability to go above or below that range if I believe there is adequate basis for doing so. Do you understand that?" (*Id.* at PageID #139). Defendant responded to both questions affirmatively. (*Id.*). At offense level 14, the Court informed Defendant that he would be in a 15- to 21-month range, and

2

reiterated that the Court may sentence Defendant above or below that range.  (*Id.* at PageID #139–40).  Defendant confirmed that he understood.  (*Id.*).

At offense level 12, the Court stated that the guidelines recommend a 10- to 16-month range, which Defendant stated he understood.  (*Id.* at PageID #140).  The Court further explained:

> THE COURT:  And that range gives me some additional discretion because—at least in terms of the guidelines—the Sentencing Commission suggests that if I choose to do so as opposed to giving you the low end of 10 months, I could split that sentence up and give you five months in custody and five months under some sort of supervision such as home confinement while on supervised release.  Do you understand that?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  But, again, it's an advisory range, and if I thought it was appropriate, I could go outside that range, either above or below.  Do you understand that?
>
> THE DEFENDANT:  Yes, Your Honor.

(*Id.*).

Later in the hearing, the Defendant waived his right to have the factual basis for the plea (which describes Defendant's offense conduct in a manner consistent with the Indictment) read in open court.  (*Id.* at PageID #147).  The Court then engaged in the following exchange with Defendant:

> THE COURT:  Mr. Kelly, aside from that one correction that's been noted in the plea agreement and has everyone's initials interlineated there, any other objections or corrections to the information stated in the factual basis and relevant conduct?
>
> THE DEFENDANT:  No, Your Honor.
>
> THE COURT:  Does that in fact comprise what you in fact did?
>
> THE DEFENDANT:  Yes, Your Honor.

(*Id.* at PageID #148–49).  After the Court satisfied the remaining requirements of Fed. R. Crim. P. 11(b), Defendant entered a plea of guilty to Counts 2–6, 7–9, and 10–12 of the Indictment.  (*Id.* at PageID #152–53).  The Court determined that Defendant was competent and capable of entering an informed plea; aware of the nature of the charges and the consequences of the plea; and that Defendant's guilty plea was knowing, voluntary, and intelligent, and supported by an independent basis in fact containing the essential elements of the offenses.  (*Id.* at PageID #153).  Accordingly, the Court accepted Defendant's guilty plea and found Defendant guilty of Counts 2–6, 7–9, and 10–12 of the Indictment.  (*Id.*).

### B.  Defendant's Motion to Withdraw his Guilty Plea

Defendant advances three reasons the Court should permit him to withdraw his guilty plea. First, Defendant claims that he was not fully informed about potential penalties because he did not know until he received the presentence report ("PSR") that Counts 7–9 were ineligible for probation, since they are Class B felonies.  (ECF No. 24, PageID #112).  Second, Defendant claims that he is in possession of newly-discovered evidence.  One of the Government's witnesses allegedly texted Defendant, trying to bribe him into transferring title of a house to the witness (presumably to protect the asset from forfeiture).  (*Id.*).  Additionally, the witness allegedly "confessed to what Mr. Kelly believes are crimes."  (*Id.*).  Third, Defendant "feels he entered the plea under duress."  (*Id.*).  He states that the plea was involuntary because he signed the plea agreement in court immediately before the change of plea hearing and "felt pressured because of concern that family members would be indicted."  (*Id.*).  Defendant concludes the motion by informing the Court that his background is fully described in the first presentence report ("PSR"), he has limited prior experience with the criminal justice system, and the Government will not be

4

prejudiced by Defendant's withdrawn plea because the Government still has its evidence and witnesses available for trial.  (*Id.* at PageID #112–13).

The Government opposes Defendant's motion.  (ECF No. 28).  The Government argues that Defendant' motion is untimely because he filed it 73 days after the change of plea hearing—far longer than the 30-day boundary line of acceptability established by the Sixth Circuit.  (*Id.* at PageID #166–68).  The Government observes that Defendant's potential-penalties and duress arguments are directly controverted by the Court's lengthy plea colloquy, and the newly-discovered evidence Defendant describes is unrelated to his criminal conduct.  (*Id.* at PageID #168–69).  The Government also notes that Defendant did not maintain his innocence at the change of plea hearing, and that Defendant's educational background confirms the knowing and voluntary nature of his guilty plea.  (*Id.* at PageID #169).

## II.     MOTION STANDARD

A criminal defendant may withdraw his guilty plea after the court accepts the plea only when "(A) the court rejects a plea agreement under Rule 11(c)(5); or (B) the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2).  The Court weighs seven factors to determine whether a "fair and just reason" supports withdrawal:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998).  Defendant has the burden of proving that the withdrawal is justified.  *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).

5

### III.    DISUSSION

Although no one factor controls the Court's analysis, the Sixth Circuit places significant weight on the length of time between a guilty plea and a later motion to withdraw it.  *See United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) (concluding that the defendant's "unjustified 75-day delay, alone, supported the [district] court's denial of a motion to withdraw") (citing *United States v. Durham*, 178 F.3d 796, 798–99 (6th Cir. 1999) (calling the defendant's 77-day delay "the strongest factor supporting the district court's denial of" the defendant's motion to withdraw); *United States v. Baez*, 87 F.3d 805, 810 (6th Cir. 1996) ("The strongest factors supporting the district court's ruling are the sixty-seven day delay between the motion and the plea, and [the defendant's] failure to justify this extensive delay.")).

The Sixth Circuit "has declined to allow plea withdrawal when intervening time periods were as brief as one month."  *United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011) (citing *United States v. Jannuzzi*, No. 07-4521, 2009 WL 579331, at *3 (6th Cir. Mar. 6, 2009) (describing 30 days as "the boundary line between what is acceptable and what is not"); *see United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (denying motion to withdraw made 35 days after guilty plea).  This is because the purpose of Rule 11(d) is to allow a "hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty."  *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (internal quotation marks omitted)).

Defendant entered his guilty plea on November 25, 2026, and moved to withdraw that plea on February 6, 2026.  (ECF No. 24).  This results in a delay of 73 days, which is more than double

6

the 30-day "boundary line" set by the Sixth Circuit.  Defendant tries to justify that delay by stating that he did not know he was ineligible for probation until the filing of the PSR on January 22, 2026.  (*Id.* at PageID #122).  The Court is not persuaded by that argument for two reasons.  First, as the Government points out, a defendant's receipt and review of a PSR before moving to withdraw his guilty plea works to Defendant's *dis*advantage.  (ECF No. 167); *United States v. Poole*, 2 F. App'x 433, 436–38 (6th Cir. 2001) (affirming district court's denial of a defendant's motion to withdraw in part because of the defendant's access to the presentence report informed his decision to file the motion).  Second, even if the Court considered the PSR as a valid basis for Defendant's motion, Defendant offers no explanation for the 15-day delay between the filing of the PSR and his motion.  Thus, factors one and two weigh heavily against granting Defendant's motion.

Defendant also has not maintained his innocence.  At the plea hearing, Defendant admitted that he engaged in the conduct described in the factual-basis portion of the plea agreement.  (ECF No. 26, PageID #148–49).  Defendant's motion likewise does not assert or present evidence that he is innocent.  Instead, Defendant alleges that he has newly-discovered impeachment evidence concerning one of the government's witnesses.  (ECF No. 24, PageID #112).  This is speculative at best; it assumes that the person would actually be called as a witness by the government at trial and that whatever was said would impeach the person as a witness.  This is an insufficient basis for allowing Defendant to withdraw his guilty plea.  *United States v. Nichols*, 986 F.2d 1199, 1201–02 (8th Cir. 1993) (holding that impeachment material concerning a government witness did not weigh in favor of granting motion to withdraw); *cf. Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (explaining that newly-discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer*

7

*v. Whitley*, 505 U.S. 333, 349 (1992) (holding that newly-discovered impeachment evidence "will seldom, if ever" establish actual innocence).  This factor therefore also weighs against granting Defendant's motion.

Regarding factor four, Defendant states that he was not fully informed about potential penalties because the Government did not inform him that Counts 7–9 were ineligible for probation.  Regarding potential penalties, Rule 11(b) requires that Defendant is informed of (1) "any maximum possible penalty, including imprisonment, fine, and term of supervised release"; (2) "any mandatory minimum penalty"; (3) "any applicable forfeiture"; and (4) "the court's obligation to impose a special assessment."  Fed. R. Civ. P. 11(b)(1)(H)–(L).  The Court has no obligation to make Defendant aware of his eligibility for probation, and Defendant has not cited any authority suggesting otherwise.  It is noteworthy that Defendant does not allege being misinformed by his counsel, the Government, or the Court that he is eligible for probation as to the aforementioned counts.  Based on his motion, he apparently just assumed that probation is available until the PSR indicated otherwise.

Moreover, beyond the maximum terms of imprisonment, maximum fines, maximum periods of supervised release, and mandatory special assessments discussed during the plea hearing, the Court also discussed the Sentencing Guidelines with Defendant.  (*Id.* and PageID #125; 134–40).  Of the three different guideline calculations the Court explained, all involved potential terms of incarceration.  (*Id.* at PageID #134–40). The Court did not discuss probation or any possibility of Defendant receiving same.  Defendant affirmed his understanding of the potential guideline calculations. (*Id.*).  The Court also stated, regarding each guideline calculation, that the Court has discretion to go both above and below the guideline range.  (*Id.*).  Defendant

stated that he understood.  (*Id.*).  To the extent that Defendant held a subjective belief that he would or could receive probation, that belief finds no support in the plea hearing transcript.

Defendant's duress argument fares no better.  Defendant claims that he "felt pressured because of concern that family members would be indicted."  (ECF No. 24, PageID #112). Defendant does not identify any individual who pressured him into pleading guilty.  While true that Defendant signed the plea agreement on the day of the plea hearing, he also informed the Court during that hearing that his decision to plead guilty was of his own free will.  (ECF No. 26, PageID #122–23).  He affirmed that he signed the plea agreement and initialed each page as an indication that he read it, reviewed it with his counsel, and understood and agreed with all its terms. (*Id.* at PageID #120–22).  Defendant's subjective feeling of pressure does not persuade this Court that he pleaded guilty under duress, given his sworn statements to the Court at the hearing. Accordingly, factor four weighs against granting Defendant's motion.

As for factors five and six, Defendant is well educated, having received a master's degree in aeronautical engineering from MIT.  (Presentence report [dated Jan. 22, 2026]).  Defendant has no mental health or substance abuse history.  (*Id.*).  He has no recent criminal history; he has five criminal convictions between 1989 and 1992, when he was between 16 and 19 years old. Regarding his most recent conviction for criminal trespass, he was sentenced to one year imprisonment, which was suspended in favor of two years' probation.  (*Id.*).  He therefore has some experience with the criminal justice system.  These factors also weigh against granting Defendant's motion.

Finally, the Court need not consider potential prejudice to the government, since Defendant did not otherwise show a "fair and just" reason for the withdrawal of his plea.  *United States v.*

*Spencer*, 836 F.2d 236, 238 (6th Cir. 1987).  Therefore, none of the factors weigh in favor of granting Defendant's motion.  The motion must be denied.

**IV.  CONCLUSION**

Defendant has not met his burden of showing a fair and just reason for withdrawing his guilty plea.  For the foregoing reasons, Defendant's motion to withdraw his guilty plea is **DENIED**.  The Court will set a new sentencing date by separate Order.

**IT IS SO ORDERED.**

**Date:  March 5, 2026**

**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**